UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DONNA R., | ) |
|                 Plaintiff, | ) |
| v. | ) No. 1:23-cv-01038-TAB-JMS |
| MARTIN J. O'MALLEY, Commissioner of the Social Security Administration,[1] | ) |
|                 Defendant. | ) |

**ORDER ON PLAINTIFF'S
BRIEF IN SUPPORT OF APPEAL**

**I.     Introduction**

Plaintiff Donna R. appeals the Social Security Administration's denial of her application for disability insurance benefits.  Plaintiff argues that the Administrative Law Judge improperly rejected the examining source opinion supporting a finding of disability; conducted a patently wrong subjective symptom analysis; failed to explain how a light residual functional capacity accommodated all of Plaintiff's limitations due to neck and back conditions and obesity; and failed to explain why the RFC lacked restrictions to accommodate Plaintiff's need to frequently alternate positions due to pain.  However, substantial evidence supports the ALJ's decision.  Plaintiff's challenges largely amount to improper requests that the Court reweigh the evidence.  Therefore, for reasons explained below, Plaintiff's request for remand [Filing No. 11] is denied.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Martin O'Malley automatically became the Defendant in this case when he was sworn in as Commissioner of the Social Security Administration on December 20, 2023, replacing Acting Commissioner of the Social Security Administration Kilolo Kijakazi.

## II. Background

On December 4, 2020, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits alleging disability beginning on March 3, 2020. The SSA denied Plaintiff's claims initially and upon reconsideration. Following a hearing, the ALJ determined that Plaintiff was not disabled.

The ALJ followed the SSA's five-step sequential process to determine if Plaintiff was disabled. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 3, 2020, the alleged onset date. At step two, the ALJ determined that Plaintiff had the following severe impairments: asthma, obesity, and cervical and lumbar degenerative disc disease. [Filing No. 9-2, at ECF p. 13.] At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I.

Before reaching step four, the ALJ determined Plaintiff's residual functional capacity, or her remaining ability to work despite her limitations. The ALJ concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following limitations:

> occasional stooping, kneeling, crouching, crawling, and climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; no exposure to extreme heat, extreme cold, humidity, or hazards, such as unprotected heights or dangerous machinery; occasional concentrated exposure to pulmonary irritants, such as dusts, odors, gases, and fumes; and frequent handling or gross manipulation, fingering or fine manipulation with the left upper extremity.

[Filing No. 9-2, at ECF p. 15.] At step four, the ALJ concluded that Plaintiff could not perform past relevant work. Finally, at step five, considering Plaintiff's age, education, work experience, and RFC, the ALJ found there were jobs that exist in significant numbers in the national economy that Plaintiff can perform, including mailroom clerk, ticket seller, and parking lot attendant. Accordingly, the ALJ concluded that Plaintiff was not disabled.

**III.     Discussion**

Plaintiff claims that the ALJ erred by rejecting the examining source opinion supporting a finding of disability and relying on unsupported state agency opinions. She further argues that the ALJ failed to: conduct a proper subjective symptom analysis, explain how a light RFC accommodates Plaintiff's limitations due to neck and back conditions and obesity, and explain why the RFC lacks restrictions to accommodate Plaintiff's need to frequently alternate positions due to pain. The Court reviews the ALJ's decision to determine whether the ALJ's factual findings are supported by substantial evidence. *See, e.g., Biestek v. Berryhill*, __ U.S. __, __, 139 S. Ct. 1148, 1153 (2019) ("On judicial review, an ALJ's factual findings shall be conclusive if supported by substantial evidence." (Internal quotation marks omitted)). In addition, the Court reviews "to determine whether [the ALJ's decision] reflects an adequate logical bridge from the evidence to the conclusions." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). "The court is not to reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the Commissioner. Where substantial evidence supports the ALJ's disability determination, we must affirm the decision even if reasonable minds could differ concerning whether the claimant is disabled." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (internal citations, quotation marks, and brackets omitted).

**A.     Rejection of Examining Source Opinion**

Plaintiff argues that the ALJ erred by rejecting the opinion of Dr. Dale Guse, Plaintiff's primary care provider. [Filing No. 11, at ECF p. 8.] Plaintiff claims that Dr. Guse issued an opinion supporting a finding of disability, while the state agency medical consultants determined Plaintiff could perform light work. Dr. Guse completed a medical assessment and opined that Plaintiff was limited to a range of sedentary work, noting Plaintiff could lift and carry less than

10 pounds frequently and 10 pounds occasionally; could sit for only 10 minutes at a time and a total of at least six hours during an eight-hour workday; could stand 10 minutes at a time and stand or walk less than two hours a day; would need to walk around for five minutes every 15 minutes of the day; required the ability to shift positions at will; and had pain that interfered with her attention and concentration 25% or more of the workday. [Filing No. 9-7, at ECF p. 159-62.] The ALJ found Dr. Guse's opinion unpersuasive because: (1) the record failed to indicate a treating relationship of the nature, duration, or frequency that generally makes treating source opinions more persuasive; (2) the opinion was not fully supported by his explanation and was inconsistent with Dr. Guse's findings showing minimal spinal impairment; (3) Dr. Guse did not issue environmental limitations; and (4) the degree of limitation Dr. Guse opined was inconsistent with the objective medical evidence of record and Plaintiff's treatment history. [Filing No. 9-2, at ECF p. 20.]

     Plaintiff argues that the ALJ did so "based on an entirely flawed analysis and ignored factors undermining her reliance on the State Agency medical consultants' opinions." [Filing No. 11, at ECF p. 8.] The Commissioner disagrees, labeling Plaintiff's argument as a "blatant" and "inherently improper" demand that the Court reweigh evidence. [Filing No. 13.] Plaintiff cites Dr. Guse's checkmarks indicating that he relied on examinations, records, allegations, and imagining. But Dr. Guse provided no specific citations to evidence, nor did he summarize what the evidence showed. Rather, as the ALJ noted in her decision, in response to the assessment question of what medical or clinical findings support his conclusions, Dr. Guse stated only that Plaintiff has "mildly decreased strength of L[eft] upper and lower extremities." [Filing No. 9-2, at ECF p. 20 (citing Filing No. 9-7, at ECF p. 159-62).] Thus, the ALJ appropriately observed that Dr. Guse provided scant support for his opinion.

Plaintiff argues that supporting explanations are not the only factor bearing on supportability, as objective evidence from Dr. Guse's treatment notes could also support his opinion. *See* 20 C.F.R. § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical findings(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."). Plaintiff contends that Dr. Guse's treatment records showed mildly decreased strength on the left side (the abnormality Dr. Guse noted in his assessment), and further indicated that Dr. Guse treated Plaintiff for various medical issues, was aware of cervical MRI results, observed discomfort in his lumbar spine and reduced reflexes on the left side, and was aware of Plaintiff's treatment with other providers for neck pain. [Filing No. 14, at ECF p. 6.] However, this argument amounts to an improper request that the Court re-weigh the evidence. *See, e.g., Burmester*, 920 F.3d at 510. In addition, to the extent that Plaintiff cites to Dr. Guse's awareness and review of other medical records, Dr. Guse did not cite such records in support of his opinion. Thus, the ALJ's supportability finding is sufficient.

The ALJ also noted that the degree of limitation provided by Dr. Guse seemed "inconsistent with the objective medical diagnostic evidence and the claimant's minimal treatment history, as well as overall physical exam findings, as detailed above." [Filing No. 9-2, at ECF p. 20.] Earlier paragraphs in the ALJ's decision described Plaintiff's modest treatment history and noted that while she displayed mildly reduced ranges of motion in her cervical spine, lumbar spine, and shoulders at the consultative examination, she usually presented with normal ranges of motion. Overall, clinical findings showed Plaintiff was neurologically intact with normal strength. [Filing No. 9-2, at ECF p. 17.] Even if the meager evidence Plaintiff cites would have supported a different conclusion, the ALJ's determinations must stand because they

rested on "more than a mere scintilla" of evidence. *Biestek*, 139 S. Ct. at 1154. Thus, the ALJ fulfilled her duty to discuss the primary supportability and consistency criteria. The ALJ cited amble evidence inconsistent with Dr. Guse's opinion and articulated why a lack of supportability, as well as consistency, diminished the persuasiveness of Dr. Guse's opinion.

### B. Subjective Symptom Analysis

Plaintiff claims that the ALJ relied on misinterpretations of the objective medical evidence and improper conclusions regarding Plaintiff's treatment history and activities, which led to a patently wrong subjective symptom analysis. [Filing No. 11, at ECF p. 14.] The regulations describe a two step-process for evaluating a plaintiff's subjective symptoms. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain"; and second, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017). In evaluating the claimant's subjective symptoms, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (internal citations omitted).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. [Filing No. 9-2, at ECF p. 16.] Plaintiff argues that in doing so, the ALJ outweighed abnormal findings of wheezing, coarse breath sounds, and reduced

6

strength and reflexes with normal and minimal findings, such as normal pulmonary effort and oxygen saturation, clear lungs at times, minimal degenerative changes, and normal range of motion in the spine, strength, reflexes, gait, grip, and manipulative skills. [Filing No. 11, at ECF p. 15.] Plaintiff accuses the ALJ of playing doctor and interpreting the significance of objective medical findings on her own by rejecting the state agency medical consultants' opinion that Plaintiff could not tolerate concentrated exposure to environmental conditions. However, Plaintiff concedes this argument is based on an irrelevant issue. None of the jobs the ALJ found Plaintiff could perform at step five required any level of exposure to pulmonary irritants. Thus, whether Plaintiff needed to be limited to occasional or no concentrated exposure makes no difference.

Plaintiff argues that this finding nevertheless highlights "precisely why ALJs should rely on medical opinions and not their own misinterpretations of evidence." [Filing No. 11, at ECF p. 17.] However, as the Commissioner points out, the ALJ provided a sound basis for limiting Plaintiff to occasional concentrated exposure to pulmonary irritants. Specifically, the ALJ cited Plaintiff's normal oxygen saturation and pulmonary effort on examination, as well as the absence of any instances of acute breathing problems requiring physician intervention. In addition, Plaintiff's ability to smoke, camp, and travel out of state were also inconsistent with the notion that she could not tolerate any pulmonary irritants. Thus, this argument does not support a request for remand. Rather, the ALJ reasonably found that Plaintiff overstated the limiting effects of her impairments and discounted Plaintiff's allegations of debilitating impairment based on their inconsistency with the medical evidence, her treatment record, and her activities. [Filing No. 9-2, at ECF p. 16.]

Plaintiff once again challenges the ALJ's finding that she continued smoking and emphasizes her testimony that she was attempting to cut back on smoking from half a pack a day to seven cigarettes a week. However, the ALJ acknowledged these precise statements. [Filing No. 9-2, at ECF p. 15-16.] Nor was it improper, as noted above, for the ALJ to find Plaintiff's continued smoking inconsistent with her professed inability to withstand concentrated exposure to pulmonary irritants.

Plaintiff also claims there is no evidence that she did not regularly refill her nebulizer prescription and that the issue was her insurance would not cover it. [Filing No. 11, at ECF p. 18.] However, in support, Plaintiff cites to the record of a note she wrote to her physician indicating that she was told she would have to pay out of pocket to fulfill the prescription at Walgreens, but insurance would cover it if the doctor placed a phone call to another pharmacy. [Filing No. 9-7, at ECF p. 130.] The record indicates that the provider then faxed the order to the requested pharmacy. [Filing No. 9-7, at ECF p. 130.] Plaintiff does not provide any evidence that she could not pay out of pocket for her prescription, nor does she show that her insurance company interfered with her ability to fill her prescription. Thus, Plaintiff's argument that this evidence should have led to the ALJ eliciting testimony from Plaintiff regarding whether insurance difficulties hindered her access to treatment is similarly unavailing.

Plaintiff further takes issue with the ALJ's conclusion that Plaintiff's history of working with her conditions prior to her disability beginning in March 2020, with no evidence of worsening thereafter, undermined the severity of her symptoms. [Filing No. 11, at ECF p. 18.] In support, Plaintiff cites to her testimony that her conditions began worsening in the beginning of 2020, and when the Covid-19 pandemic began, her doctor took her off work due to the pandemic, given her asthma. [Filing No. 11, at ECF p. 18-19 (citing Filing No. 9-2, at ECF p.

8

41-42).] Plaintiff also cites to treatment records in early 2020 showing reports of shortness of breath, wheezing, and chest congestion for a month, with only mild relief from medications, and Plaintiff's statement to her primary care provider that her neck pain had increased in September 2021. [Filing No. 11, at ECF p. 19.] However, as the Commissioner points out, Plaintiff relies, at least in part, on her own allegations and testimony as support for her subjective symptom allegations. This circular reasoning cannot stand. Moreover, the ALJ explicitly considered this testimony. [Filing No. 9-2, at ECF p. 15.] Plaintiff's challenge is yet another improper request to reweigh evidence. *See, e.g., Burmester*, 920 F.3d at 510. Plaintiff similarly cites mildly abnormal lung sounds and wheezing at two examinations during the relevant period, as well as her report of neck and should pain with slightly diminished left arm and leg strength in September 2021. However, these isolated results do not show that the conditions with which Plaintiff was able to work worsened, much less do they indicate the conditions worsened into debilitating impairments. Therefore, the ALJ reasonably found Plaintiff failed to prove her conditions meaningfully worsened upon or after her alleged onset date.

Finally, Plaintiff argues that the ALJ focused on "certain of Plaintiff's activities and statements to find contradictions not supported by the evidence." [Filing No. 11, at ECF p. 19.] For example, the ALJ emphasized Plaintiff's testimony that she does not drive normally due to numbness and tingling in her left hand in comparison to her testimony that she drove a few weeks prior to the hearing and prior statement that she could drive. [Filing No. 9-2, at ECF p. 17.] Plaintiff claims the ALJ failed to explain how driving to the store two weeks prior to the hearing necessarily undermined her testimony that she normally does not drive. Likewise, Plaintiff argues that her testimony that she attempts to do chores a few times a week for 20 minutes with help does not discredit her testimony that she spends most of her day resting in

9

various positions. However, the ALJ considered all of Plaintiff alleged limitations in performing these activities and reasonably found the activities to be inconsistent with allegations of debilitating impairment. [Filing No. 9-2, at ECF p. 17-18.] The ALJ reiterated that she was not equating Plaintiff's level of activities of daily living to full time work but rather considered them as only one factor in determining Plaintiff's RFC. While Plaintiff downplays the significance of her daily activities, she essentially argues that the ALJ should have weighed them differently. This is improper and unpersuasive.

### C. Light RFC limitations

Finally, Plaintiff claims the ALJ failed to explain how the light RFC, which requires standing or walking six hours a day and carrying up to 20 pounds, accommodated Plaintiff's limitations due to her neck and back conditions, left-sided weakness, and obesity, and failed to account for her need to frequently alternate positions. [Filing No. 11, at ECF p. 20, 24.] Plaintiff argues the ALJ's reasons for rejecting Dr. Guse's opinion and Plaintiff's statements regarding her limitations were not supported. Plaintiff also accuses the ALJ of relying on her own misinterpretations of the evidence.

As the Commissioner points out, these arguments are essentially nothing more than a repackaging of her earlier arguments that the ALJ should have credited her subjective allegations and Dr. Guse's opinion. However, as noted above, the ALJ properly discounted both. While Plaintiff claims that the ALJ did not explain how the light work RFC accommodated her limitations, the ALJ explicitly adapted the light-work RFC recommendations of the reviewing physicians. [Filing No. 9-2, at ECF p. 19.] The ALJ also departed from those opinions where additional or greater limitations were necessary from more recent evidence. Once again, Plaintiff's invitation to reweigh the evidence is rejected. Remand is not warranted for this issue.

10

### IV.   Conclusion

For these reasons, Plaintiff's request for remand is denied. [Filing No. 11.]

Date: 2/15/2024

*[signature]*

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email